UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| A.H.R., by and through his parent M.R.V.; S.K. by and through his parent K.J.; K.A.S. by and through her parent I.S.; Z.O.S. by and through his parents H.H. and C.S.;<br><br>Plaintiffs,<br><br>vs.<br><br>MARYANNE LINDEBLAD, in her official capacity as State Medicaid Director; DOROTHY FROST TEETER, in her official capacity as Director of the Washington State Health Care Authority; WASHINGTON STATE HEALTH CARE AUTHORITY;<br><br>Defendants. | No.<br><br>COMPLAINT |

## I. PRELIMINARY STATEMENT

1. Plaintiffs are four children with disabilities between the ages of 10 months and two years old who require around-the-clock skilled nursing care to be able to live safely at home. Defendants have themselves authorized these Plaintiffs to receive 16 hours per day of skilled nursing care as medically necessary in order to live safely at home.

2. Plaintiff A.H.R. has never lived at home, however, because the Defendants have failed to recruit enough providers of skilled nursing care to meet A.H.R.'s needs. A.H.R., unable to staff his 16 hours per day of authorized nursing care to live at home, resides in an institution where he

COMPLAINT- 1 OF 17
NO.

Northwest Justice Project
401 Second Avenue S, Suite 407
Seattle, Washington 98104
Phone: (206) 464-1519  Fax: (206) 624-7501

receives necessary medical care to live safely.

3. Z.O.S. has lived in an institution since February 2015 because the Defendants have failed to make sufficient numbers of private duty nurses available to allow him to live safely at home.

4. Plaintiffs S.K. and K.A.S. are immediately threatened with institutionalization because they cannot find nurses enrolled in the Medicaid program to meet their need for care at home.

5. Defendants are required by federal law to ensure that Plaintiffs receive all necessary treatment that their conditions require and, pursuant to the Americans with Disabilities Act, that they receive this care in the most integrated setting.

6. Because of Defendants' actions and inactions, inadequate numbers of nurses participate in the Medicaid program to meet Plaintiffs' needs for skilled nursing care, resulting in the current crisis in meeting the Plaintiffs' needs.

7. The Defendants have an obligation to ensure that Plaintiffs get the medical assistance they need so that they need not live indefinitely in institutions away from their families.

8. Plaintiffs seek relief to require the Defendants to make available and arrange for nurses sufficient to meet their needs as required by the Early and Periodic Screening Diagnosis and Treatment mandate of the Medicaid program.

## II. JURISDICTION AND VENUE

9. This Court has jurisdiction under 28 U.S.C. § 1331, because this action arises under the laws of the United States, and 28 U.S.C. § 1343 (3), (4) which confer original jurisdiction on the federal district courts for all claims asserted under 42 U.S.C. § 1983 to redress deprivations of rights, privileges, or immunities guaranteed by Acts of Congress and the United States Constitution.

10. Plaintiffs seek declaratory, injunctive, and other appropriate relief pursuant to 42 U.S.C. §1396a, 42 U.S.C. § 1983, 42 U.S.C. §12133, 28 U.S.C. §§ 2201, 2202, and Fed. R. Civ. P. 57

COMPLAINT- 2 OF 17
NO.

Northwest Justice Project
401 Second Avenue S, Suite 407
Seattle, Washington 98104
Phone: (206) 464-1519  Fax: (206) 624-7501

and 65.

11. Venue lies properly in this District pursuant to 28 U.S.C. § 1391 (b). The Defendants do business in King County and the Western District of Washington and a substantial portion of the events and omissions leading to the filing of this complaint occurred in King County, Washington.

12. Exhaustion of administrative remedies is not required and would be futile.

### III. PARTIES

13. A.H.R. is a 10-month old, low-income boy with a disability who lives in an institution in Pierce County, Washington. His mother, M.R.V., lives in Kitsap County, Washington. As a low-income person with a disability, A.H.R. receives Medicaid.

14. S.K. is a two-year old, low-income boy with a disability who lives in Benton City, Washington, with his mother K.J. As a low-income person with a disability, S.K. receives Medicaid.

15. K.A.S. is a one-year old low-income girl with a disability who lives in Mattawa, Washington with her mother M.R.V. As a low-income person with a disability, K.A.S. receives Medicaid.

16. Z.O.S. is a two-year old low income boy with a disability who currently resides in an institution in Othello, Washington. As a low-income person with a disability, Z.O.S. is a recipient of Medicaid. His parents, H.H. and C.S., reside in Benton County, Washington.

17. Defendant Maryanne Lindeblad is an employee of the Washington State Health Care Authority and the State Medicaid Director. Defendant Lindeblad is sued in her official capacity only. All acts alleged to have been taken by Defendant Lindeblad were taken under color of state law.

18. Defendant Frost Teeter is the Director of the Washington State Health Care Authority

COMPLAINT- 3 OF 17
NO.

Northwest Justice Project
401 Second Avenue S, Suite 407
Seattle, Washington 98104
Phone: (206) 464-1519  Fax: (206) 624-7501

1   ("the Authority"), which is the single state agency that administers Washington's Medicaid

2   program. Defendant Frost Teeter is sued in her official capacity only. All acts alleged to have

3   been taken by Defendant Frost Teeter or the Authority were taken under color of state law.

    19. Defendant Washington State Health Care Authority ("the Authority") is an administrative agency of the state of Washington. The Authority is responsible for the administration of the Medicaid program within the state of Washington. The Authority is a recipient of federal financial assistance.

## IV. STATUTORY AND REGULATORY FRAMEWORK

20. Washington State participates in the Medicaid program, a voluntary federal-state partnership for the provision of healthcare for low-income people.

21. The Authority is the single state agency that administers the Medicaid program in Washington.

22. The Authority is a recipient of federal funds and/or federal financial assistance, and was so at all times relevant to the allegations in this complaint.

23. Federal law requires states participating in Medicaid to provide or arrange for the provision of certain services to Medicaid-eligible beneficiaries under age 21 years.

24. The provisions of the Medicaid Act specific to beneficiaries under age 21 years are known as Early and Periodic Screening, Diagnosis and Treatment, or EPSDT, set forth at 42 U.S.C. §1396d(r). EPSDT is a mandatory benefit required under the Medicaid Act, 42 U.S.C. §1396d(a)(4)(B).

25. The EPSDT provisions of the Medicaid Act include 42 U.S.C. §1396d(r)(5), which requires that states provide to children "[s]uch other necessary health care, diagnostic services, treatment, and other measures described in subsection (a) of this section to correct or ameliorate

COMPLAINT- 4 OF 17
NO.

Northwest Justice Project
401 Second Avenue S, Suite 407
Seattle, Washington 98104
Phone: (206) 464-1519  Fax: (206) 624-7501

defects and physical and mental illnesses and conditions discovered by the screening services, whether or not such services are covered under the state plan."

26. The reference to "subsection (a)" in 42 U.S.C. §1396d(r)(5) refers to 42 U.S.C. §1396d(a) of the Medicaid Act which lists broad categories of medical assistance that are covered by the Medicaid Act.

27. Private duty nursing is one of the enumerated categories of service under subsection (a), *i.e.*, 42 U.S.C. §1396d(a)(8).

28. "Private duty nursing" is defined in the Code of Federal Regulations, 42 C.F.R. §440.80. In pertinent part, private duty nursing is defined as "nursing services for recipients who require more individual and continuous care than is available from a visiting nurse or routinely provided by the nursing staff of the hospital or skilled nursing facility…."

29. Under 42 C.F.R. §440.80, private duty nursing must be provided by a registered nurse or a licensed practical nurse under the direction of the recipient's treating physician.

30. As a participant in the Medicaid program, the Defendants must provide private duty nursing as defined at 42 C.F.R. §440.80 to Medicaid eligible children[1] under age 21 years when this service is found by a child's treating physician to be necessary to correct or ameliorate a child's condition or illness.

31. The Defendant is required by federal law to contract for, provide for, or both, all medically necessary services for the Plaintiff.

32. The Defendants are further required by federal law to "make available" all EPSDT services to the Plaintiff with reasonable promptness.

33. Upon information and belief, Defendants maintain an inadequate number of skilled

---

[1] Throughout this complaint the term "children" will refer to people under the age of 21 years.

COMPLAINT- 5 OF 17
NO.

Northwest Justice Project
401 Second Avenue S, Suite 407
Seattle, Washington 98104
Phone: (206) 464-1519  Fax: (206) 624-7501

1  nurses in their Medicaid program to make private duty nursing available to all EPSDT eligible
2  children.

3  34. Upon information and belief, Defendants are aware and have been aware for years that
4  their network of private duty nurses is inadequate to provide needed assistance to Medicaid-
5  eligible persons requiring private duty nursing to live outside of an institution.

6  35. Upon information and belief, many more children than the Plaintiffs wait months to be
7  discharged from hospitals, are rehospitalized or placed in institutions, or go without adequate
8  nursing care because of the Defendants' failure to recruit an adequate number of nurses to its
9  program, and that Defendant is aware of this fact.

10  36. Defendants are the responsible persons or entities for ensuring that the Plaintiffs receive
11  medical assistance within 90 days of their identified need for it.

## V. FACTS

### A. Plaintiff A.H.R.

37. A.H.R. is diagnosed with venolymphatic malformation. Present from birth, this condition results in A.H.R.'s airway being extremely narrow and unstable. The severity of A.H.R.'s condition results in A.H.R. being unable to breathe independently. He requires a tracheostomy to breathe and is fed via a gastrostomy tube connected to his stomach. Without this tracheostomy, and the skilled medical interventions required to keep his airway clear, A.H.R. would become hypoxic and die.

38. A.H.R.'s disease process results in medical fragility that must be monitored continuously by a licensed practical nurse or a registered nurse. A.H.R. uses a tracheostomy to breathe 24 hours per day. His oxygen saturation levels must be monitored by a trained nurse, who can respond accordingly by clearing his airway and monitoring his tracheostomy for secretions. His

COMPLAINT- 6 OF 17
NO.

Northwest Justice Project
401 Second Avenue S, Suite 407
Seattle, Washington 98104
Phone: (206) 464-1519  Fax: (206) 624-7501

1  airway must be monitored for its "patency" and secretions and other blockages removed
2  regularly.

3  39. Since A.H.R. discharged from Seattle Children's Hospital in August of 2015, A.H.R. has
4  been authorized to receive up to 16 hours per day of in-home private duty nursing in the
5  Medicaid program.

6  40. With 16 hours per day in-home private duty nursing, A.H.R. would be able to live safely
7  at home with his parents and to move about freely in his community.

8  41. A.H.R. has never lived at home, however, because the Defendants have failed to maintain
9  enough providers of skilled nursing care to meet A.H.R.'s needs.

10 42. Seattle Children's Hospital discharged A.H.R. to Ashley House, an institution in Tacoma,
11 Washington in August of 2015. Ashley House is a group facility for medically complex children.

12 43. A.H.R.'s parents prefer for him to live at home with his family and not in an institution,
13 hospital, or other out-of-home placement, where they believe his quality of life is reduced.

14 44. Without skilled nursing support at all hours of the day, A.H.R. would suffer from
15 inadequate care, which will lead to hospitalization, injury or worsening of his condition, or death.

16 45. It is medically necessary for A.H.R. to receive 16 hours per day of private duty nursing.

17 46. A.H.R. is being harmed by being forced to live in an institution or medical facility to
18 receive the medical assistance that he needs.

19 47. A.H.R. will continue to be harmed unless and until Defendants arrange for or make
20 available an adequate network of private duty nurses.

21 **B. Plaintiff S.K.**

22 48. S.K. is diagnosed with severe tracheomalacia. Tracheomalacia is a condition, present
23 from birth, which results in a child's airway being too weak to support breathing. The severity of
24 S.K.'s condition results in S.K. being unable to breathe independently. He requires a ventilator to

COMPLAINT- 7 OF 17
NO.

Northwest Justice Project
401 Second Avenue S, Suite 407
Seattle, Washington 98104
Phone: (206) 464-1519  Fax: (206) 624-7501

breathe. Without this ventilator, and the skilled medical interventions required to make it work, S.K. would become hypoxic and die.

49. S.K.'s disease process results in medical fragility that must be monitored continuously by a licensed practical nurse or a registered nurse. S.K. has a tracheostomy and is dependent on mechanical ventilation to breathe 24 hours per day. His oxygen saturation levels must be monitored by a trained nurse, who can respond accordingly. His airway must be monitored for its "patency" and secretions and other blockages removed regularly.

50. Since S.K. discharged from Seattle Children's Hospital in 2014, S.K. has been authorized to receive up to 16 hours per day of in-home private duty nursing in the Medicaid program.

51. With 16 hours per day in-home private duty nursing, S.K. is able to live safely at home with his parents and to move about freely in his community.

52. Without the provision of private duty nursing at home, S.K. would require care in a hospital or institution that provided continuous skilled nursing care.

53. S.K.'s guardians prefer for him to live at home with his family and not in an institution, hospital, or other out-of-home placement, where they believe his quality of life would be significantly reduced.

54. Since coming home in November 2014, S.K. has been consistently unable to recruit adequate numbers of nurses enrolled in the Medicaid program to staff all 16 hours per day of his authorized care.

55. At present, S.K. receives five overnights of nursing care per week, and no skilled care during the day.

56. For the days where no overnight nurse is available, S.K.'s parents assume the duties of providing his skilled nursing care all night and all day.

COMPLAINT- 8 OF 17
NO.

**Northwest Justice Project**
401 Second Avenue S, Suite 407
Seattle, Washington 98104
Phone: (206) 464-1519  Fax: (206) 624-7501

57. S.K.'s providers at Seattle Children's Hospital have become concerned about his safety due to the unavailability of private duty nursing.

58. S.K.'s providers at Seattle Children's Hospital have stated that S.K. will need to be rehospitalized or placed in an institution in October of 2015 if his nursing shifts are not adequately staffed.

59. Without skilled nursing support at all hours of the day, S.K. will suffer from inadequate care, which will lead to hospitalization, injury or worsening of his condition, or death.

60. It is medically necessary for S.K. to receive 16 hours per day of private duty nursing.

61. S.K. would be harmed by being forced to move out of his home and into an institution or medical facility.

62. S.K. will be forced to move out of his home and into an institution or medical facility if the Defendants are not required make available or arrange for skilled nurses to work for S.K. in Medicaid's private duty nursing program.

**C. Plaintiff K.A.S.**

63. K.A.S. is a one-year old girl diagnosed with Treacher-Collins syndrome and severe laryngomalacia. Laryngomalacia is a condition, caused by Treacher-Collins syndrome, which results in a child's airway being extremely narrow and obstructed. The severity of K.A.S.'s condition results in her being unable to breathe independently. She requires a tracheostomy to breathe. Without this tracheostomy, and the skilled medical interventions required to keep it clear of secretions, K.A.S. would become hypoxic and die.

64. K.A.S.'s disease process results in medical fragility that must be monitored continuously by a licensed practical nurse or a registered nurse. Her oxygen saturation levels must be monitored by a trained nurse, who can respond accordingly. Her airway must be monitored for its "patency" and secretions and other blockages removed regularly.

COMPLAINT- 9 OF 17
NO.

Northwest Justice Project
401 Second Avenue S, Suite 407
Seattle, Washington 98104
Phone: (206) 464-1519  Fax: (206) 624-7501

65. Even in the hospital setting, K.A.S.'s airway has become blocked, resulting in severe hypoxia requiring emergency intervention from her physicians.

66. Since K.A.S. discharged from Seattle Children's Hospital this year, she has been authorized to receive up to 16 hours per day of in-home private duty nursing in the Medicaid program.

67. With 16 hours per day in-home private duty nursing, K.A.S. is able to live safely at home with her parents and to move about freely in her community.

68. Without the provision of private duty nursing at home, K.A.S. would require care in a hospital or institution that provided continuous skilled nursing care.

69. K.A.S.'s guardians prefer for her to live at home with her family and not in an institution, hospital, or other out-of-home placement, where they believe her quality of life would be significantly reduced.

70. Since coming home in November 2014, K.A.S. has been consistently unable to recruit adequate numbers of nurses enrolled in the Medicaid program to staff all 16 hours per day of her authorized care.

71. At present, K.A.S. has no reliable nursing shifts staffed.

72. K.A.S.'s parents provide all of her skilled nursing care.

73. K.A.S.'s father had to quit his job to provide care for K.A.S. after no shifts were filled.

74. K.A.S.'s mother must remain awake all night to ensure that K.A.S. does not have an airway blockage.

75. K.A.S.'s providers at Seattle Children's Hospital have become concerned about her safety due to the unavailability of private duty nursing.

76. K.A.S.'s providers at Seattle Children's Hospital have stated that K.A.S. will need to be rehospitalized or placed in an institution if her nursing shifts are not adequately staffed.

COMPLAINT- 10 OF 17
NO.

Northwest Justice Project
401 Second Avenue S, Suite 407
Seattle, Washington 98104
Phone: (206) 464-1519  Fax: (206) 624-7501

77. Without skilled nursing support at all hours of the day, K.A.S. will suffer from inadequate care, which will lead to hospitalization, injury or worsening of her condition, or death.

**D. Plaintiff Z.O.S.**

78. Z.O.S. is a two-year old boy who is diagnosed with anoxic brain injury and an unstable airway. He is dependent on a tracheostomy to breathe. Because of his tracheostomy and unstable airway, he requires around-the-clock skilled nursing care to ensure that his airway does not become obstructed. An untreated blockage of his airway could cause him to become hypoxic and die. Skilled nurses monitor Z.O.S.'s airway, suction secretions, and feed Z.O.S. through his gastrostomy tube.

79. In January of 2015, Z.O.S. was admitted to Seattle Children's Hospital for care. Prior to his admission, he had been authorized to receive up to 16 hours per day of private duty nursing. His nursing shifts, however, went unstaffed and Z.O.S.'s mother had been providing his care nearly around the clock.

80. When Z.O.S. became clinically stable and ready for discharge from Seattle Children's Hospital, no nursing agency was able to fill his shifts for private duty nursing.

81. Staff at Seattle Children's Hospital contacted four nursing agencies, none of whom could find nurses willing to work in the Medicaid program to serve Z.O.S. at home.

82. Because of the lack of nurses, Z.O.S.'s parents agreed to place him in an institution in Yakima, Washington, approximately 80 miles away from his home.

83. With 16 hours per day in-home private duty nursing, Z.O.S. is able to live safely at home with his parents and to move about freely in his community.

84. Without the provision of private duty nursing at home, Z.O.S. requires care in a hospital or institution that provides continuous skilled nursing care.

COMPLAINT- 11 OF 17
NO.

Northwest Justice Project
401 Second Avenue S, Suite 407
Seattle, Washington 98104
Phone: (206) 464-1519  Fax: (206) 624-7501

85. Z.O.S.'s parents prefer for him to live at home with his family and not in an institution, hospital, or other out-of-home placement, where his quality of life is significantly reduced.

86. Z.O.S. presently lives in an institution that is more than an hour drive from his family.

87. At present, Z.O.S. has no provider capable of staffing his home nursing.

88. Without skilled nursing support at all hours of the day, Z.O.S. will suffer from inadequate care, which will lead to hospitalization, injury or worsening of her condition, or death.

## VI. IRREPARABLE HARM

89. Plaintiffs will be irreparably harmed if Defendants are permitted to maintain an inadequate network of skilled nurses for the private duty nursing program.

90. Plaintiffs are low-income and cannot afford to pay for the nursing care on their own.

91. The potential for harm to the Defendants is negligible if they are required to provide private duty nursing as prescribed by the treating physicians of Plaintiffs. Defendants have authorized this care, but are unable or unwilling to recruit adequate numbers of nurses.

92. Plaintiffs have a substantial likelihood of success on the merits of their claims based upon Defendants' violation of Title XIX of the Social Security Act and the Americans with Disabilities Act, 42 U.S.C. §§1396a *et seq*.

93. It is in the public interest that the Plaintiffs receive healthcare services covered by Title XIX of the Social Security Act in the manner that their physicians determine is necessary to provide medically necessary care at home and to avoid the increased risk of illness, hospitalization, and death that is created by limiting or reducing the medical care they receives.

**VII. FIRST CLAIM FOR RELIEF: FAILURE TO ARRANGE FOR OR MAKE MEDICAL ASSISTANCE AVAILABLE REASONABLY PROMPTLY**

94. Plaintiffs reallege and incorporate by reference each and every allegation set forth previously.

COMPLAINT- 12 OF 17
NO.

Northwest Justice Project
401 Second Avenue S, Suite 407
Seattle, Washington 98104
Phone: (206) 464-1519  Fax: (206) 624-7501

95. Under Medicaid and the EPSDT provisions of Medicaid in particular, the Defendants have a duty to arrange for or make medical assistance available to Plaintiffs. 42 USC 1396a(a)(10)(A) (State plan for medical assistance must provide for making medical assistance available) and 42 U.S.C. §1396d(r) (EPSDT).

96. Defendants' failure to timely provide private duty nursing services as prescribed by Plaintiffs' treating physicians has resulted in Plaintiffs being institutionalized or receiving less than adequate medical assistance.

97. Plaintiffs are suffering irreparable injury as a result of Defendants' failure to provide the medically necessary skilled nursing requested by Plaintiff's physicians.

98. Defendants' failure to recruit an adequate number of nurses to its private duty nursing program violates Defendants' duty under federal Medicaid law to arrange for or make available medical assistance to the Plaintiffs.

99. Defendants' refusal to actually provide Medicaid-funded "private duty nursing" to the Plaintiffs, as that service is defined in 42 C.F.R. §440.80, is a violation of the Plaintiffs' right to medical assistance under Title XIX of the Social Security Act which authorizes the Medicaid program.

100. Defendants have the authority and ability to ensure that the Plaintiffs receive adequate nursing care.

101. Defendants have failed to make medical assistance available reasonably promptly as required by federal Medicaid law.

102. The right to receive the medical assistance and EPSDT benefits to which Plaintiffs are entitled is a right secured by the laws of the United States, including, but not limited to, Title XIX of the Social Security Act.

COMPLAINT- 13 OF 17
NO.

Northwest Justice Project
401 Second Avenue S, Suite 407
Seattle, Washington 98104
Phone: (206) 464-1519  Fax: (206) 624-7501

103. In violation of 42 U.S.C. § 1983, Defendants Lindeblad and Frost Teeter have subjected Plaintiffs to the deprivation of their rights under color of law of the state of Washington.

**VIII. SECOND CLAIM FOR RELIEF: DISCRIMINATION ON THE BASIS OF DISABILITY**

104. Plaintiffs reallege and incorporate by reference herein each and every allegation and paragraph set forth previously.

105. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity or be subjected to discrimination by such entity." 42 U.S.C. § 12132.

106. In enacting the ADA, Congress found that "[i]ndividuals with disabilities continually encounter various forms of discrimination, including … segregation . . . ." 42 U.S.C. § 12101(a)(5)

107. Regulations implementing Title II of the ADA provide: "A public entity shall administer services, programs and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. §35.130(d).

108. Defendants are public entities within the meaning of Title II of the ADA.

109. Regulations implementing Title II of the ADA provide: "A public entity may not, directly or through contractual or other arrangements, utilize criteria or other methods of administration: (i) that have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability; [or] (ii) that have the purpose or effect of defeating or substantially impairing the accomplishment of the objectives of the entities program with respect to individuals with disabilities. . . ." 28 C.F.R. §35.130(b)(3).

COMPLAINT- 14 OF 17
NO.

Northwest Justice Project
401 Second Avenue S, Suite 407
Seattle, Washington 98104
Phone: (206) 464-1519 Fax: (206) 624-7501

110. The United States Supreme Court in *Olmstead v. L.C. ex rel. Zimring,* 527 U.S. 581 (1999) held that unnecessary institutionalization of individuals with disabilities is a form of discrimination under Title II of the ADA. In doing so, the Supreme Court interpreted the ADA's "integration mandate" as requiring persons with disabilities to be served in the community when: (1) the state determines that community-based treatment is appropriate; (2) the individual does not oppose community placement; and (3) community placement can be reasonably accommodated. *Id.* 527 U.S. at 607.

111. The ADA prohibits discrimination based on type of disability.

112. The ADA's regulations further provide that "[a] public entity should not impose or apply eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any service, program, or activity, unless such criteria can be shown to be necessary for the provision of the service, program, or activity being offered." 28 C.F.R. §35.130(b)(8).

113. Pursuant to the ADA, public entitles are required to provide meaningful access to their programs, services and activities, and provide any accommodations or modifications necessary for the people with disabilities to access those services.

114. Plaintiffs are "qualified individual[s] with a disability" within the meaning of the ADA in that they (1) have a physical impairment that substantially limits one or more major life activities and meet the essential eligibility requirements in that they (2) are capable of living independently in their own homes, with assistance, and (3) are eligible for Medicaid in Washington State.

115. Defendants' actions and inactions have placed A.H.R. and Z.O.S. in institutions that are not the most integrated community placement possible, in violation of the ADA's integration mandate.

COMPLAINT- 15 OF 17
NO.

**Northwest Justice Project**
401 Second Avenue S, Suite 407
Seattle, Washington 98104
Phone: (206) 464-1519  Fax: (206) 624-7501

116. Defendants' actions and inactions have threatened to place K.A.S. and S.K. in institutions that are not the most integrated community placements possible.

117. Defendants discriminate against Plaintiffs in ways that include, but are not limited to, being deliberately indifferent to Plaintiffs' inability to locate and retain qualified providers of private duty nursing services and failing to individually contract with nurses in order to make nurses available to the plaintiff.

118. Defendants have utilized eligibility criteria and methods of administration that subject Plaintiffs to discrimination on the basis of disability, in violation of 28 C.F.R. §35.130(b)(3) & (8), and otherwise denied meaningful access to their programs, services and activities.

119. Defendants' actions discriminate against individuals whose disabilities require that they receive skilled nursing services because the individual may only get the adequate medical assistance they need in an institutional setting.

120. Defendants have the authority and ability to ensure that the Plaintiffs receive adequate nursing care.

121. Defendants' actions violate Title II of the ADA.

122. Defendants' actions violate Section 504 of the Rehabilitation Act of 1973.

123. Pursuant to 42 U.S.C. §12133 and 29 U.S.C. §794, Plaintiffs are entitled to damages, declaratory and injunctive relief, and reasonable attorney's fees and costs incurred in bringing this action.

## IX. PRAYER FOR RELIEF

Plaintiffs pray for the following relief:

1. Waive the requirement for the posting of any bond or security for the entry of temporary, preliminary, and permanent injunctive relief;

2. Temporarily and preliminarily enjoin the Defendants from failing to make nursing

COMPLAINT- 16 OF 17
NO.

Northwest Justice Project
401 Second Avenue S, Suite 407
Seattle, Washington 98104
Phone: (206) 464-1519  Fax: (206) 624-7501

available to the Plaintiffs reasonably promptly;

3. Temporarily and preliminarily enjoin the Defendants from failing to take all reasonable measure to make or arrange for nursing care for the Plaintiffs in an amount necessary to allow them to live safely at home;

4. Declare that the Defendants' policies and practices related to their ability to make available in-home private duty nursing to Medicaid-eligible children violates the EPSDT mandate of Title XIX of the Social Security Act and the ADA;

5. Permanently enjoin the Defendants from maintaining an inadequate number of nurses in their private duty nursing program;

6. Permanently enjoin the Defendants from failing to make available assistance to Medicaid-eligible children under age 21 by maintaining an inadequate network of nurses;

7. Order the appointment of a master pursuant to FRCP 53 to monitor Defendants' compliance with federal law with respect to the availability of medical assistance, specifically the availability of private duty nursing to Medicaid recipients in Defendants' Medicaid program;

8. Award the Plaintiffs their damages in an amount to be determined at trial;

9. Award the Plaintiffs their costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988, 42 U.S.C. § 12133 and any other applicable law or regulation;

10. Order such other relief as the Court deems proper or in the interests of justice.

DATED this 28th day of September, 2015.

**NORTHWEST JUSTICE PROJECT**

By: s/Scott Crain
Scott Crain, WSBA #37224
Attorney for Plaintiffs
401 Second Ave. S #407
Seattle, Washington 98104
Telephone 206-707-0900
Email: scottc@nwjustice.org

COMPLAINT- 17 OF 17
NO.

**Northwest Justice Project**
401 Second Avenue S, Suite 407
Seattle, Washington 98104
Phone: (206) 464-1519  Fax: (206) 624-7501